396 P.2d 426

**Henry Oliver JOHNSON and Wilmoth Johnson, Plaintiffs-Appellants,**

**v.**

**C. C. PRIMM, d/b/a Primm Rexall Drug, Defendant-Appellee.**

**No. 7433.**

Supreme Court of New Mexico.

Sept. 8, 1964.

Rehearing Denied Nov. 23, 1964.

Thomas B. Forbis, Roswell, for appellants.

Atwood & Malone, Roswell, for appellee.

MOISE, Justice.

Plaintiff complains here of the granting of defendant's motion for summary judgment.

The complaint was filed in this action on behalf of the plaintiff for her personal injuries, on behalf of the husband as the community representative for losses sustained by the community from defendant's alleged negligence, and on behalf of the husband in his personal capacity for loss of consortium. The allegations were that defendant had failed to exercise due care in selling plaintiff a drug (equanil) in excess of the amount prescribed.

The following facts are not disputed. Mrs. Johnson, the plaintiff, called at the office of Dr. Kaiser in Roswell complaining of pains in her back in October, 1960. Dr. Kaiser prescribed equanil (Milltown) for Mrs. Johnson, to relieve the muscle spasms believed to be causing the difficulty. The prescription was for 24 tablets, to be taken three times a day after meals. These directions appeared on the label of the bottle which was delivered to Mrs. Johnson by the pharmacist at defendant's drug store. In November, 1960, Mrs. Johnson requested that the prescription be refilled. At that time Mr. Primm, the defendant, phoned Dr. Kaiser to determine if he was authorized to refill the prescription. The instructions from Dr. Kaiser were, in substance, that Mrs. Johnson should be permitted to "have a few along as she needs them." Based on these instructions, the prescription on file with Mr. Primm was marked, "P.R.N.," or prescription refillable as needed.

The prescription was refilled at this time with the same instructions as to dosage that appeared on the original container, and with 24 pills. Mrs. Johnson continued to take the equanil as prescribed until March or April, 1961. At this time she began to increase the number of pills she was taking per day, and in June or July, 1961, she was taking seven to ten equanil pills per day and continued on this dosage until February, 1962, when she was taken to Ft. Worth, Texas, for treatment by Dr. Furman. When Dr. Furman "withdrew" the plaintiff from the use of equanil, she convulsed for six hours. She has also suffered brain and liver damage caused by the prolonged overdose of equanil.

During the time Mrs. Johnson was taking equanil all her prescriptions for the drug were filled by the defendant, with three exceptions in the fall of 1961. According to the depositions and affidavits in this case, it is apparently undisputed that every container sold by defendant to Mrs. Johnson with equanil in it was labeled with the directions that the drug was to be taken three times a day after meals.

Some time in early 1961 the defendant suggested to Mrs. Johnson that because she was taking equanil regularly, it would be less expensive if she bought in lots of 100 pills. The number of times that the prescription was filled in hundred tablet lots is not clear. The defendant, in his affidavit, claims that according to his records the prescription was filled only once with one hundred tablets. Plaintiff, in her deposition, says that she had the prescription filled in hundred tablet lots from April, 1961 until February, 1962, depending on how much money she had at the time. If she did not have enough for 100 tablets, she would get a refill of twenty-four.

As already noted, the trial court sustained a motion for summary judgment in favor of defendants and against Mrs. Johnson for her personal injuries, and against Mr. Johnson in his capacity as the representative of the community.

The questions presented for our consideration are the following:

(1) Was the increasing of the dosage by the plaintiff over that prescribed, the proximate cause of the injuries sustained by plaintiff, or was the sale of equanil in one hundred tablet lots rather than twenty-four the proximate cause; or

(2) Was plaintiff's violation of the doctor's instructions contributory negligence that proximately caused the injury, thereby barring any recovery against defendant?

■ Summary judgment, as often announced by this court, is not a substitute for trial. Ginn v. MacAluso, 62 N.M. 375, 310 P.2d 1034; Michelson v. House, 54 N.M. 197, 218 P.2d 861. The purpose of summary judgment is to determine if there is a

genuine issue of fact to be submitted to the trier of facts. Zengerle v. Commonwealth Ins. Co. of New York, 60 N.M. 379, 291 P.2d 1099; McLain v. Haley, 53 N.M. 327, 207 P.2d 1013. It is not to be used to determine the facts. Wieneke v. Chalmers, 73 N.M. 8, 385 P.2d 65; Securities Acceptance Corp. of Santa Fe v. Valencia, 70 N.M. 307, 373 P.2d 545.

▉▉▉ In considering a motion for summary judgment, the court is required to construe any question of the existence of a material issue of fact against the moving party. Pederson v. Lothman, 63 N.M. 364, 320 P.2d 378; Allied Bldg. Credits, Inc. v. Koff, 70 N.M. 343, 373 P.2d 914. Sometimes the basic facts may be undisputed, but conflicting inferences may be drawn from the facts that would foreclose the granting of summary judgment. Hewitt-Robins, Inc. v. Lea County Sand & Gravel, Inc., 70 N.M. 144, 371 P.2d 795.

With this background, is either of the points noted capable of decision as a matter of law when considered with the depositions and affidavits filed in this case?

▉▉ For the purpose of decision we assume, but do not decide, that the affidavits and depositions before the court were sufficient to establish negligence of the defendant. However, did this negligence proximately cause or contribute to plaintiff's injuries? Did these same depositions and affidavits establish contributory negligence

on the part of Mrs. Johnson which proximately contributed thereto? There can be no recovery unless defendant's negligence was the proximate cause of the injury and plaintiff's contributory negligence did not proximately contribute thereto. Moss v. Acuff, 57 N.M. 572, 260 P.2d 1108; Clark v. Cassetty, 71 N.M. 89, 376 P.2d 37.

The affidavits of both Dr. Kaiser and Mr. Primm, the defendant, are to the effect that they are familiar with the drug equanil and that the quantities prescribed here would not form a dependence on the drug. On the other hand, there is the affidavit of Dr. Furman that equanil tends to destroy the recipient's power to resist; that it is habit-forming when taken in any quantity even though the drug is not generally considered a narcotic in medical circles.

▉▉ If we eliminate any questions of absence of will power induced by the pills we would have no difficulty in concluding that the court's ruling was correct. By her conscious violation of instructions of the doctor, regardless of the number of tablets available to her, plaintiff's acts of daily taking more of the drug than directed would certainly deny her a recovery; and, further, even conceding that at some instant in point of time she became addicted and thereby deprived of will power to discontinue the use of the drug, absent a showing that defendant was or should have been aware of such fact, there could still be no recovery. 28 C.J.S.

518 Druggists § 10c (1). Scott v. Greenville Pharmacy, Inc., 212 S.C. 485, 48 S.E. 2d 324, 11 A.L.R.2d 745, is a case very similar to the instant one, and so concludes. See, also, 31 A.L.R. 1336, 1347; Corona Coal Co. v. Sexton, 21 Ala.App. 51, 105 So. 716, and Gorman-Gammil Drug Co. v. Watkins, 185 Ala. 653, 64 So. 350, from which we quote the following pertinent language:

"The ordinary conduct of rational beings must be governed by common prudence and common sense, and he who fails in this to his own hurt cannot justly charge the ills that follow to the antecedent and remote fault of another, albeit such remote fault supplies the condition without which the injury would not have occurred.

"The result here complained of was plainly due to the inexcusable carelessness and folly of plaintiff, and to allow him to recover danages from defendant under the circumstances shown would certainly insult the common sense of mankind. * * *"

However, plaintiffs have alleged and submitted proof by affidavit and deposition on the question of plaintiff's volition. If the plaintiff was deprived of her will power and was so addicted to the use of the medication that she could not control her conduct, there would be a real question of whether her acts thereafter could be classed as contributory negligence. To bar recovery because of contributory negligence, the question to be answered is whether the plaintiff's conduct meets the standard that a reasonably prudent person would adopt to avoid injury to herself. Williams v. City of Hobbs, 56 N.M. 733, 249 P.2d 765. In this connection, attention is called to the language quoted from Gorman-Gammil Drug Co. v. Watkins, supra, wherein reference is made to the "ordinary conduct" of a "rational being." If plaintiff was not a rational being and such condition proximately resulted from defendant's negligence, her conduct is not to be judged by the same standards as would apply to an ordinary or average adult, but rather would be weighed in comparison with conduct of a person of her age, mental and physical condition. Martinez v. Davis, 73 N.M. 474, 389 P.2d 597. In view of the deposition before the court concerning the possible effect of the drug when taken as prescribed, together with the question concerning defendant's knowledge thereof, and the additional claim that plaintiff's will was overcome, it was for the fact finder to determine whether defendant was negligent and, if so, whether plaintiff was chargeable with contributory negligence proximately causing her own injury.

We note the cases cited by defendant involving actions against dispensers of alcoholic beverages to known alcoholics when injury follows, either to the one who consumed the liquor or to third persons.

That there is an area of similarity between such cases and the instant one is fairly apparent. See note in 130 A.L.R. 302 and 75 A.L.R.2d 833. However, our decision is based on the rules generally applicable when motions for summary judgment are being considered. These rules are reviewed above, and dictate a reversal of the trial court's order granting summary judgment.

The cause is reversed and remanded with instructions to the trial court to reinstate the same on the docket and proceed in a manner consistent herewith.

It is so ordered.

CARMODY and CHAVEZ, JJ., concur.